We have for review Butler v. State, 634 So.2d 700 (Fla. 1st DCA 1994), which certified conflict with State v. Flowers, 566 So.2d 50
(Fla. 2d DCA 1990), and State v. Brown, 556 So.2d 790
(Fla. 2d DCA 1990). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We quash the decision below and approve State v.Flowers, 566 So.2d 50 (Fla. 2d DCA 1990), and State v. Brown,556 So.2d 790 (Fla. 2d DCA 1990).
 FACTS AND PROCEEDINGS BELOW[1]
Respondent Yama Butler was charged with possession of cocaine in violation of section 893.13(1)(f), Florida Statutes (1991). Butler claimed that his arrest was illegal because the officer arresting him lacked probable cause for believing Butler had committed a crime. Butler filed a motion to suppress the evidence seized upon his arrest. When the motion was denied, Butler pled nolo contendere, expressly reserving his right to appeal the denial of the motion to suppress. On appeal, the district court reversed the trial court's denial of Butler's motion to suppress, but certified conflict with other district court opinions.
The evidence presented at the motion to suppress hearing, considered in the light most favorable to the prevailing party, the State, reflects that at about 11:30 p.m. on April 25, 1992, Officer Putnam was contacted by a known confidential police informant. Putnam had used information from this informant on at least twenty occasions since February 1, 1992, and sixty to seventy percent of these tips had resulted in felony arrests. The informant told Putnam that a black male, about 5'10" tall, wearing a black jacket, white t-shirt, and blue jeans, was selling *Page 1125 
powdered cocaine on the sidewalk in front of 726 West Beaver Street, a location known to Putnam to be part of an area with a high volume of street level drug sales. Putnam had seized crack cocaine two months earlier at this exact location. The informant told Putnam that the described drug seller wrapped cocaine inside rolled-up one-dollar bills and placed them in his pants pocket, ready to sell.
Within fifteen minutes of receiving this tip, Putnam and another officer saw Butler standing on the sidewalk in front of 726 West Beaver Street. Butler's clothes and appearance exactly matched the description given by the informant, and Putnam noted that the only other person located in the vicinity did not meet this description. Putnam then approached Butler who initially turned as if to walk away, but then stopped. Putnam patted Butler down on the outside of his clothing and felt a large, soft bulge in Butler's left front pants' pocket, which he believed to be money. Putnam asked Butler about the bulge, and Butler responded that it was twenty-eight one-dollar bills. Putnam then reached into Butler's pocket and retrieved the folded money (i.e., twenty-seven or twenty-eight bills), but found no cocaine. However, when Putnam reached into the pocket again, he retrieved another folded dollar bill which contained powdered cocaine as the informant had described. Putnam then formally took Butler into custody.
The trial court denied the motion to suppress, finding there was probable cause for a warrantless arrest and search predicated on the information received from the informant and considering the totality of the circumstances known to the police officer.
 LAW AND ANALYSIS
This Court is bound, on search and seizure issues, to follow the opinions of the United States Supreme Court regardless of whether the claim of an illegal arrest or search is predicated upon the provisions of the Florida or United States Constitutions. See Art. I, § 12, Fla. Const.; Bernie v.State, 524 So.2d 988, 990-91 (Fla. 1988). Accordingly, we must determine whether the First District's analysis is consistent with the "totality of circumstances" analysis for determining probable cause as adopted in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
 PRE-GATES LAW
Prior to Gates, the United States Supreme Court established a probable cause analysis that came to be known as the "Aguilar-Spinelli two-prong test." This analysis was formulated in the decisions in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
At issue in Aguilar was the sufficiency of a search warrant affidavit which stated:
 Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.
378 U.S. at 109, 84 S.Ct. at 1511. The Court found the affidavit inadequate, reasoning:
 The vice in the present affidavit is at least as great as in Nathanson[2] and Giordenello.[3] Here the "mere conclusion" that petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only "contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein," it does not even contain an "affirmative allegation" that the affiant's *Page 1126 
unidentified source "spoke with personal knowledge." For all that appears, the source here merely suspected, believed or concluded that there were narcotics in petitioner's possession. The magistrate here certainly could not "judge for himself the persuasiveness of the facts relied on . . . to show probable cause." He necessarily accepted "without question" the informant's "suspicion," "belief" or "mere conclusion."
 Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, . . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was "credible" or his information "reliable." Otherwise, "the inferences from the facts which lead to the complaint" will be drawn not "by a neutral and detached magistrate," as the Constitution requires, but instead, by a police officer "engaged in the often competitive enterprise of ferreting out crime," . . . or, as in this case, by an unidentified informant.
Id. at 113-15, 84 S.Ct. at 1513-14 (footnotes citations omitted). This last quoted paragraph contains what became known as "Aguilar's two-pronged test."[4]
Under the first or "basis of knowledge" prong of the Aguilar
analysis, facts must be disclosed demonstrating the basis of a police informant's knowledge that evidence of crime would be found. Under the second, "veracity" prong, facts must be revealed which indicate either the credibility of the informant or the reliability of his information on the particular occasion. Thus, the second or veracity prong was said to have a "credibility spur" and a "reliability spur." 1 Wayne R. Lafave, Search andSeizure § 3.3(a), at 613 (2d ed. 1987). Both prongs of theAguilar test needed to be satisfied for a finding of probable cause.
 THE INFORMANT'S VERACITY
The "veracity" prong of the Aguilar test was usually established by the prior record of the informant in providing reliable tips that proved accurate. See, e.g., McCray v.Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) (officer testified that he had been acquainted with informant for about a year and that during this period informant had supplied him with information 15 or 16 times which resulted in numerous arrests and convictions; another officer also testified that he had used the same informant 20 to 25 times which led to many convictions). Only if the informant's credibility could not be established was it necessary to consider the alternative reliability spur of the veracity prong of Aguilar. See UnitedStates v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (holding that declaration against interest meets reliability spur).
 BASIS OF KNOWLEDGE
The most direct way of establishing the basis of knowledge prong of the Aguilar test was by explicitly setting out how the informant claimed to have come by the information he gave to the officer. Lafave, supra, at 615; see Spinelli, 393 U.S. at 425, 89 S.Ct. at 593 (White, J., concurring). However, theSpinelli Court also held that the absence of a direct showing as to the informant's knowledge was not necessarily fatal, if a basis of knowledge could be established from the wealth of detail provided in the tip:
 In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.
 The detail provided by the informant in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), provides a suitable benchmark. While Hereford, the Government's informer in that case, did *Page 1127 
not state the way in which he had obtained his information, he reported that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin on one of two specified mornings. Moreover, Hereford went on to describe, with minute particularity, the clothes that Draper would be wearing upon his arrival at the Denver station. A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way. Such an inference cannot be made in the present case. Here, the only facts supplied were that Spinelli was using two specified telephones and that these phones were being used in gambling operations. This meager report could easily have been obtained from an offhand remark heard at a neighborhood bar.
393 U.S. at 416-17, 89 S.Ct. at 589-90 (footnote omitted).[5]
Justice White, in his concurring opinion in Spinelli,
provided a further explanation for this "self-verifying detail method" of satisfying the "basis of knowledge" prong ofAguilar:
 I am inclined to agree with the majority that there are limited special circumstances in which an "honest" informant's report, if sufficiently detailed, will in effect verify itself — that is, the magistrate when confronted with such detail could reasonably infer that the informant had gained his information in a reliable way. Detailed information may sometimes imply that the informant himself has observed the facts. Suppose an informant with whom an officer has had satisfactory experience states that there is gambling equipment in the living room of a specified apartment and describes in detail not only the equipment itself but also the appointments and furnishments in the apartment. Detail like this, if true at all must rest on personal observation either of the informant or of someone else. If the latter, we know nothing of the third person's honesty or sources; he may be making a wholly false report. But it is arguable that on these facts it was the informant himself who has perceived the facts, for the information reported is not usually the subject of casual day-to-day conversation. Because the informant is honest and it is probable that he has viewed the facts, there is probable cause for the issuance of a warrant.
Id. at 425-26, 89 S.Ct. at 594 (citation omitted).
 CORROBORATION
Following Aguilar and Spinelli, the United States Supreme Court has repeatedly relied on a variety of relevant corroborating facts known by the police in evaluating the use and sufficiency of an informant's tip as a primary basis for establishing probable cause. 1 Wayne R. Lafave, Search andSeizure § 3.3(f), at 677 (2d ed. 1987). Sometimes the court utilized evidence of corroboration where there was no explicit showing of the informant's basis of knowledge, see Draper, 358 U.S. at 313, 79 S.Ct. at 333; Ker v. California, 374 U.S. 23, 36, 83 S.Ct. 1623, 1631, 10 L.Ed.2d 726, 739-40 (1963); while at other times it appears the Court was using evidence of corroboration because the informant's veracity was not otherwise established. See United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), overruled on othergrounds, United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). And sometimes it appears the Court used evidence of corroboration for both reasons. See Aguilar;Spinelli; Gates. One legal commentator has observed: "Moreover, the type of information considered as tending to corroborate has ranged from the innocent conduct in Draper to that which itself created `strong suspicion' in Ker." Lafave, supra, at *Page 1128 
681.[6]
 THE "TOTALITY OF CIRCUMSTANCES" TEST
The Aguilar-Spinelli structure for analysis was reconsidered in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), where the majority decided
 to abandon the "two-pronged test" established by our decisions in Aguilar and Spinelli. In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from Aguilar and Spinelli.
462 U.S. at 238-39, 103 S.Ct. at 2332 (citations omitted). Ultimately, the Court held that, with respect to the two prongs of the Aguilar-Spinelli test, an informant's veracity or reliability and his basis of knowledge are merely "relevant considerations" in an overall totality of circumstances analysis.Id.[7]
The Gates opinion also addresses the role that corroboration of innocent details plays in the probable cause analysis. The Court first rejects the argument that corroboration of innocent activity, alone, may not be sufficient to support a finding of probable cause. 462 U.S. at 244 n. 13, 103 S.Ct. at 2335 n. 13. It notes that "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."[8] *Page 1129 
The Court then states that it "is perfectly reasonable" for innocent behavior to
 provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens demands. . . . In making the determination of probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of non-criminal acts.
Id.
 THIS CASE
In its analysis, the District Court invalidated Butler's search and arrest on two grounds. First, it found that there was insufficient detail in the CI's tip as to the source of the CI's knowledge. And, second, it found that the police failed to corroborate the information in the tip through independent police work. The District Court fleshed out the basis for its conclusion as follows:
 Although the tip is detailed in its description of appellant's clothing, his location and the location of the contraband on his person, and although the CI's reliability is fairly well established, the "source" of the CI's knowledge is lacking. There is no record evidence indicating the CI personally observed the cocaine or how he came to know appellant had the contraband. Thus, except for the detail about the cocaine wrapped in bills in his pants pocket, the tip offered nothing more than innocent details of identification that were readily observable by the public at large.
 Even if we were to find the CI's firsthand knowledge could be reasonably inferred from the informant's detail about how the cocaine would be wrapped, the search and arrest were unlawful because there was no independent corroboration by the police of the details in the informant's tip. Upon arriving at the scene, Officer Putnam neither observed nor did he wait to observe anything to make him reasonably suspect the appellant had violated or was violating any law. He saw no sign of suspicious behavior, drugs or weapons. Moreover, the tip contained no prediction of the appellant's future actions. The appellant was merely standing in the location indicated by the CI.
634 So.2d at 704 (citations omitted). As indicated earlier, the District Court certified conflict with two cases: State v.Flowers, 566 So.2d 50 (Fla. 2d DCA 1990), and State v. Brown,556 So.2d 790 (Fla. 2d DCA 1990). Those cases followed State v.Edwards, 547 So.2d 183 (Fla. 2d DCA 1989).
 EDWARDS
In Edwards, the Second District was faced with a CI's tip[9] which provided the following information:
 Kenny Edwards' black and gold pickup truck was at Ernie's, a local bar. Soon, Edwards' girlfriend, a white female, would drive the vehicle to the ABC Liquor lounge. Then Edwards, who would be in possession of two eight balls of cocaine powder, would drive the truck from ABC.
Id. at 184. After the police verified every detail of this tip, the CI called again and told the police that the pickup would leave the ABC Lounge in five minutes. Approximately five minutes later, the police observed the vehicle leaving with Edwards driving. The truck was stopped and the police searched Edwards and the truck. Cocaine was seized. In its analysis, the Edwards
court noted the factual similarity to Draper, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The court also concluded that:
 Applying the facts of the instant appeal to [Gates and Draper], the CI provided detailed information regarding Edwards' future conduct. The officer personally verified each fact except the final detail — that Edwards possessed cocaine. At this point, *Page 1130 
the officer had probable cause to search Edwards' truck. . . .
 Edwards argues that the reliability of the informant could not be determined because the court did not know the basis of the informant's knowledge. This court has previously rejected a similar argument. See Graham v. State, 438 So.2d 114 (Fla. 2d DCA 1983); Smith v. State, 411 So.2d 952 (Fla. 2d DCA 1982).
Id. at 185 (citation omitted).
 BROWN
Subsequently, in Brown the Second District was confronted with the following circumstances:
 [A] reliable informant advised a Lakeland detective that two people in the area of Fifth and Kettles Streets (a "high drug area") were selling rock cocaine. The informant described both persons, one male and one female, as well as the automobile they were using. He also gave the man's "street name" of "Playboy." . . . Soon thereafter the police located a vehicle matching the description and containing three subjects. Because the car's windows were tinted it was not until after stopping it that the officers confirmed that appellee and a woman matching the informant's description were inside. The officers apprised appellee of the reason for the stop and indicated they would perform a patdown search. Appellee said, "Fine. I don't have any drugs on me." Inside his jacket pocket was a pill bottle containing cocaine residue.
556 So.2d 790. The Brown Court upheld the search and arrest by relying on the Edwards holding that "once police verified all but the `final detail' of the informant's tip they had probable cause to arrest and thus to search." Id.
 FLOWERS
In the third case, Flowers, a detective received a telephone call from an informant who had previously proven reliable and with whom the detective had worked for years:
 The C.I. told [the detective] that the C.I. had just observed a woman named Sandra inside a parked green Oldsmobile Cutlass and that she was in possession of cocaine. The C.I. gave the address where the car could be found, the tag number of the car and where on the woman's body the cocaine could be found. The detective and another officer went immediately to the address given by the C.I. where they saw the appellee in the situation described by the C.I. They took her into custody and a search of her person done at the police station by female officers resulted in finding a cocaine rock where the C.I. had said it would be.
566 So.2d at 51. The district court then reasoned:
 In situations where the police rely upon known and reliable informants to aid them in detecting crime, as long as the information is sufficiently detailed and the police can verify the details except for the final one of the commission of the crime, the detention and search based upon this information will be upheld because probable cause will have been furnished. State v. Brown, 556 So.2d 790 (Fla. 2d DCA 1990), and State v. Edwards, 547 So.2d 183
(Fla. 2d DCA 1989).
Id. The court upheld the arrest and search because the details of the tip in the case "are easily as detailed, if not more so, than in Brown and Edwards." Id.
 BUTLER
In this case, we have an informant whose veracity (i.e., credibility and reliability) is unquestioned. Officer Putnam had used information from this informant at least 20 times, and 60 to 70% of the tips resulted in felony arrests. As the district court acknowledged, the informant's reliability is "fairly well established." See Butler, 634 So.2d at 704. We agree there is a "strong showing" in support of the informant's veracity.
As the district court correctly notes, the informant's tip did not contain the precise basis of his knowledge. See id.
However, the informant's tip did provide an abundance of overall detail. Cf. Holmes v. State, 549 So.2d 1119 (Fla. 1st DCA 1989). The informant told the police the following information about Butler: his height (5' 10"), race (African-American), *Page 1131 
type of clothing (black jacket, white t-shirt, and blue jeans), location (on the sidewalk in front of 726 Beaver Street), type of drugs sold (cocaine), location of drugs sold (pants pocket), and method of delivery (rolled-up one-dollar bills). Even under the prior rigid requirements of Spinelli, a sufficient basis of personal knowledge may be inferred from the wealth of detail that the informant provided.
In addition to the Draper-type detail, it is possible to infer personal knowledge from the detail of the informant's description of the manner of packaging of the drugs and their exact location on Butler's person. When construed in the State's favor, the detail in the informant's tip also precludes characterizing it as a "meager report [that] could easily have been obtained from an offhand remark heard at a neighborhood bar." See Spinelli, 393 U.S. at 417, 89 S.Ct. at 589. Further, any weakness on this issue may be bolstered in part by the strong showing of the informant's prior veracity.
Similarly, under Gates and its progeny, we conclude that the seemingly innocent activity observed here could be used by the police to verify the informant's tip. Within minutes of receiving the tip, the police corroborated every item in the tip except the ultimate determination of whether Butler had any drugs on his person. In this respect, this case can be likened to Draper
where the police verified all of the information in the tip except whether the defendant would have heroin with him. There were also other "circumstances within the Officer's knowledge" that, while perhaps not significant in isolation, appear to bolster a probable cause determination: the house in front of which Butler was standing was a house from which Putnam had seized crack cocaine two months earlier and was located in a "high drug area," Butler, 634 So.2d at 701; and, upon arriving at the scene of the arrest, Putnam observed Butler turn and attempt to walk up a set of stairs. Id. at 707 (Lawrence, J., dissenting).
 CONCLUSION
Under the totality of the circumstances, including the credible informant, the detailed tip, and the corroborating circumstances, we cannot say that the trial court erred in determining that Officer Putnam possessed sufficient knowledge to conclude that there was a probability of criminal activity on the part of Butler.
Our decision should not be understood to undercut the importance of the Fourth Amendment's probable cause requirement. Likewise, we caution that in many instances a tip from an informant, standing alone, will not justify a finding of probable cause for an arrest or search. However, as the Gates Court emphasized: "an informant's `veracity,' `reliability' and `basis of knowledge' are highly relevant in determining the value of [an informant's] report." 462 U.S. at 230, 103 S.Ct. at 2328. Our decision is also influenced by the great deference we accord a trial court's determination on a motion to suppress, and the presumption of fair inferences in favor of the prevailing party.See Doctor v. State, 596 So.2d 442, 447 (Fla. 1992).
Because we conclude the district court's analysis is inconsistent with the controlling decision of the United States Supreme Court in Gates, we quash the decision below and remand for further proceedings consistent herewith.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and WELLS, JJ., concur.
[1] These facts are taken substantially from the district court opinion. See Butler, 634 So.2d at 701-02.
[2] See Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933) (holding that lawful search warrant may not issue upon affidavit which simply says that affiant "has cause to suspect and does believe that certain merchandise" held in violation of law is to be found on certain premises).
[3] See Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958) (holding insufficient arrest warrant complaint which simply said that on specified date "Giordenello did receive, conceal, etc., narcotic drugs, to-wit: heroin hydrochloride with knowledge of unlawful importation.").
[4] This test was applied to either an arrest or search without a warrant. See McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).
[5] Although the Spinelli Court uses the facts in Draper v.United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), to illustrate the self-verifying detail situation, it is important to note that Draper was not decided upon such a basis. Rather, Draper was based upon another device for "rehabilitating" what would otherwise be an insufficient or incomplete report of an informant: partial corroboration.
[6] Because of its factual similarity, Draper is illustrative of the nature and use of "partial corroboration" by the Court. InDraper, an informant who had given reliable information in the past indicated to the police that Draper would be returning from Chicago by train with three ounces of heroin. The informant described Draper and his clothing, and also noted that Draper would be carrying a tan zipper bag and that he habitually walked fast. When a person so described got off the train, he was arrested and searched, resulting in the discovery of heroin. The Court upheld the seizure and reasoned that "with every other bit of [the informant's] information being thus personally verified," the surveilling agent had probable cause "that the remaining unverified bit of [the informant's] information — that Draper, would have heroin with him — was likewise true." 358 U.S. at 313, 79 S.Ct. at 333. "The Draper Court did not indicate specifically what defect the corroboration remedied, but inasmuch as the basis of the informant's knowledge was never revealed it seemed that the Court somehow thought that the corroboration . . . sufficed in lieu of his failure to explain its source." Lafave,supra, at 678.
[7] The Court's rationale for abandonment of theAguilar-Spinelli test was premised on a number of considerations, including: (1) the "totality of-the-circumstances approach is far more consistent with our prior treatment of probable cause" as a "practical, nontechnical conception," "a fluid concept . . . not readily, or even usefully, reduced to a neat set of legal rules," 462 U.S. at 230-31, 232, 103 S.Ct. at 2328, 2329; (2) the two elements of the Aguilar-Spinelli test should not have an "independent status"; instead, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability," id. at 233, 103 S.Ct. at 2329; (3) the "`two-pronged test' has encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues," id. at 234, 103 S.Ct. at 2330; and (4) "an informant's `veracity,' `reliability' and `basis of knowledge'" are not "entirely separate and independent requirements to be rigidly exacted in every case;" "[r]ather, . . . they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is `probable cause'." Id. at 230, 103 S.Ct. at 2328.
For proposition two above the Court offers two examples. The first example is particularly instructive in our case:
If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip.
462 U.S. at 233, 103 S.Ct. at 2329-30.
[8] In making this statement, the Court is referring to its earlier assertion that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Gates, 462 U.S. at 235, 103 S.Ct. at 2330 (quotingSpinelli, 393 U.S. at 419, 89 S.Ct. at 590).
[9] The CI had previously given the police information concerning names and locations of drug suppliers and drug locations, but this information never served as a basis for a warrant. Edwards, 547 So.2d at 184 n.[*].