819 So.2d 166 (2002)
Janice NIEMANN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-483.
District Court of Appeal of Florida, Fourth District.
May 8, 2002.
Rehearing Denied June 19, 2002.
Carey Haughwout, Public Defender, and Louis G. Carres, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Karen Finkle and Christine D. Coughlin, Assistant Attorneys General, West Palm Beach, for appellee.
*167 KLEIN, J.
Appellant, while driving her van, was stopped by an officer who had been told by an informant that appellant would be transporting a substantial amount of marijuana from Florida to Virginia on a specific day. The officer's search turned up fifty pounds of marijuana. Appellant moved to suppress on the ground that there was no probable cause for the warrantless search, her motion was denied, and she appeals.
In his order denying the motion to suppress, which we adopt, Judge Schack explained:

FACTS
On June 17, 1999 Detective Michael Sheelar of the St. Lucie County Sheriff's Office was called by "a cooperating source." The source was not an anonymous tipster. Detective Sheelar knew the source from prior dealings. That source had previously provided the detective with information concerning criminal conduct on 4 or 5 occasions. Each time the information was proven to be accurate and true. Lt. Smith of the sheriff's office was also aware of, and knew the good reputation of, the source. On this particular occasion the source advised Detective Sheelar that a maroon Toyota minivan with a Virginia tag would be driving from a housing development off Central Boulevard in Jupiter, Florida, and would head north on I-95 carrying a large amount of cannabis. The van would be driven by the Defendant, who the source knew by name, or her boyfriend. The source provided the Virginia tag number. Originally the source advised the trip would occur on June 18, 1999, then on June 18, 1999 the source advised the detective that the trip would occur on June 19, 1999.

* * *
On June 18, 1999, Detective Sheelar drove to the housing development at issue in Jupiter and observed the maroon van described by the source. The Virginia tag number matched that provided by the source. On the morning of June 19, 1999, the detective went to the same housing development and observed the same van on Central Boulevard in Jupiter. The Defendant was driving. She drove north on I-95. Detective Sheelar followed the van into St. Lucie County. Deputy Sheriff Robert McNamara clocked the Defendant traveling at 80 mph in a 70 mph zone, by using his speedometer that had been properly calibrated 5 months earlier. The Defendant was stopped for speeding by Deputy McNamara.
The Defendant was asked for her driver's license and registration. Approximately 4 or 5 minutes after the stop, while Deputy McNamara was conducting a driver's license and registration check, Detectives Graff and Atkinson arrived with Detective Graff's drug-sniffing dog Jake. While Deputy McNamara was filling out a warning for speeding, and awaiting the results of the driver's license and registration check, Detective Graff took his dog out of his vehicle and walked the dog around the Defendant's van. The dog reacted at the front door of the van, but it was not an action typical of a drug alert. The Defendant was asked for consent to place Jake in the van and was asked to remove her own dog from the van. After allegedly consenting and removing her dog, Jake was placed in the Defendant's van and alerted on a cooler in the back. The cooler was opened and 51 pounds of cannabis were found inside.
A driver's license and registration check for an out-of-state license and registration takes more time than the same check on in-state documents. The total time from the stop of the van to the arrest of the Defendant was less than 15 minutes.
*168 The time lag between the conclusion of the evidentiary hearing in this case and the entry of this order was due to this court's attempt to resolve conflicting evidence on the issue of consent. This court has weighed and re-weighed the evidence on that subject countless times. This court is unable to resolve the conflict in the evidence on that subject.

ISSUE
The issue on this case is whether under the totality of the circumstances there was probable cause to stop and search the Defendant's van.

DISCUSSION
In the absence of a search warrant, the State has the burden of proof to justify the warrantless search of the Defendant's van. State v. Setzler, 667 So.2d 343 (Fla. 1st DCA 1995). Further
[t]his Court is bound, on search and seizure issues, to follow the opinions of the United States Supreme Court regardless of whether the claim of an illegal arrest or search is predicated upon the provisions of the Florida or United States Constitutions.
State v. Butler, 655 So.2d 1123, 1125 (Fla. 1995).
As discussed in Butler:
* * *
The detail provided by the informant in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), provides a suitable benchmark. While Hereford, the Government's informer in that case, did not state the way in which he had obtained his information, he reported that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin on one of two specific mornings. Moreover, Hereford went on to describe, with minute particularity, the clothes that Draper would be wearing upon his arrival at the Denver station. A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way.

* * *
The ... structure for analysis was reconsidered in Illinois v. Gates, [462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)] ..., where the majority decided
... [to] reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
The Gates opinion also addresses the role that corroboration of innocent details plays in the probable cause analysis. The Court first rejects the argument that corroboration of innocent activity, alone, may not be sufficient to support a finding of probable cause. It notes that "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."
Butler, 655 So.2d at 1126-1128 (Citations and footnotes omitted.)
Using the test just outlined, the State has clearly established probable cause for the stop and search of the Defendant's van. In particular the case of Draper v. United States discussed within Butler is particularly applicable to the facts before this court. The totality of the *169 circumstances establishes that a past-proven, reliable source provided detailed data to Detective Sheelar. Although the testimony did not establish how this source knew the information provided to Detective Sheelar, the information was very rich in detail. The careful investigation by Detective Sheelar provided corroboration of all the information provided by the source, except the final detail [the marijuana], as in Draper [the heroin]. The source also had a prior history of providing reliable tips that had proven to be accurate. The officers had probable cause to stop and search the Defendant's van without her consent.
Affirmed.
SHAHOOD and HAZOURI, JJ., concur.