TAYLOR, J.
In this appeal from a delinquency adjudication and commitment on drug charges, appellant contends that the trial court erred in denying his motion to suppress physical evidence and statements because the deputy exceeded the scope of his consent to search his car. We agree and reverse.
Deputy Michael Walsh was on routine bike patrol at night with his partner, Corporal Goddard, when he observed a vehicle back out of a residence in the Watergate Estates Community Mobile Home Park. The vehicle turned around and headed towards him without its headlights on. Deputy Walsh stepped out into the street and held up his hand, motioning the driver to stop the car so he could speak with him. He intended to advise the driver that he did not have his lights on and investigate whether the car had working headlights and whether the driver had a valid driver’s license and any traffic record.
There were two people in the car. The deputy recognized the driver (appellant) and knew his name. He told him why he had stopped him. He gave appellant a written warning for the headlight infraction. After asking appellant a few questions about his presence in the area and noting his nervousness, the deputy asked *883 appellant if he had anything illegal in the car. Appellant responded, “No, I don’t have anything illegal in the car. You’re welcome to search it if you like.” Deputy Walsh then asked appellant and his passenger to step out of the vehicle. He had them stand at the back of the car with Corporal Goddard while he searched the car.
A center console with a compartment was located between the two front seats of the vehicle. When Deputy Walsh tried to open the compartment, he discovered it was locked. He asked appellant if he had a key to it. The car belonged to appellant’s mother and appellant told the deputy that she had the only key. Without asking appellant’s permission, the deputy then removed the key from the ignition and used it to open the center console lock. Inside the center console, he found a small plastic baggie containing three small blue pills and an even smaller baggie containing suspected marijuana. He also found a small glass pipe, the type frequently used for smoking illegal narcotics. Deputy Walsh read Miranda warnings to both appellant and his passenger. Appellant told the deputy that all of the “stuff’ was his.
Appellant filed a motion to suppress all physical evidence and statements. At the hearing on the motion, appellant testified that he did not give the officers consent to search the car. The deputy testified that appellant consented to a search of the car and that he reasonably believed that his consent included a search of the center console. He based his belief on the fact that appellant never told him that he could not search the center console and did not protest or try to stop him when he used the ignition key to open the console.
The trial court found the deputy’s testimony regarding appellant’s consent to seai'ch to be more credible than appellant’s and denied the motion to suppress. Thereafter, appellant entered a plea to the drug charges, reserving his right to appeal the court’s ruling on the motion to suppress. The trial court acknowledged appellant’s express reservation of the right to appeal but did not specifically find the motion to be dispositive. The trial court adjudicated appellant delinquent and committed him to a Level 8 program.
We first address the state’s argument that the suppression issue was not preserved because there was no stipulation by the state or finding by the court that the motion to suppress is dispositive. See State v. Carr, 438 So.2d 826, 828 (Fla.1983) (holding that an issue is preserved on a guilty plea only if it is dispositive of the case). In cases like this, where a motion tests the suppression of contraband which the defendant is charged with possessing, the motion is usually considered dispositive of the case. See Brown v. State, 376 So.2d 382, 385 (Fla.1979); Howard v. State, 515 So.2d 346 (Fla. 1st DCA 1987). Thus, the lack of an express finding that the issue is dispositive is not fatal. See Hawk v. State, 848 So.2d 475, 478 (Fla. 5th DCA 2003).
Turning to the merits of the appeal, we begin by accepting the trial court’s factual finding that appellant voluntarily consented to a search of the car. That finding is supported by the record. See Porter v. State, 765 So.2d 76, 77 (Fla. 4th DCA 2000) (“The ruling of the trial court on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the reviewing court will interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.”). Although we are “required to accept the trial court’s determination of the historical facts leading to the search, a defendant is entitled to a de novo review of whether the application of the law to the historical facts estab *884 lishes an adequate basis for the trial court’s finding of probable cause.” Id. (citing Ornelas v. United States, 517 U.S. 690, 691, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).
Next, we must determine whether appellant’s consent to search his car extended to a search of the locked console inside the car. See Davis v. State, 594 So.2d 264 (Fla.1992) (holding that once it is established that the search was conducted pursuant to a defendant’s voluntary consent, a court need only determine whether the search was conducted within the limits of the consent given). This issue concerns a mixed question of fact and law. We review application of the law to the historical facts de novo. See Ornelas. Moreover, in applying the law regarding search and seizure issues, we are bound, under the conformity clause of the state constitution, to follow applicable United States Supreme Court precedents. Art. I, § 12, Fla. Const.; State v. Butler, 655 So.2d 1123, 1125 (Fla.1995); Niemann v. State, 819 So.2d 166 (Fla. 4th DCA 2002).
The standard for measuring the scope of a person’s consent under the Fourth Amendment is that of objective reasonableness: what an ordinary reasonable person would have understood to be the scope of consent by the exchange between the officer and the consenting person. Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). In Jimeno, the officer stopped the defendant for a traffic violation and informed him that he believed he was carrying narcotics. After receiving the defendant’s consent to search the car, the officer looked inside and opened a brown paper bag lying on the car’s floorboard. He found a kilogram of cocaine inside. The Court upheld the search, stating that it was objectively reasonable for the officer to conclude that the defendant’s general consent included consent to search closed containers within the car which might carry drugs. The Court said that the scope of a search is “generally defined by its expressed object.” Id. Thus, since a reasonable person could be expected to know that narcotics are generally carried in some form of container, the authorization to search extended to looking inside the paper bag.
However, the Court clarified that not all containers could be opened within the general rule, noting, as did the Florida Supreme Court in State v. Wells, 539 So.2d 464 (Fla.1989), that breaking open a locked briefcase “is very likely unreasonable.” Jimeno at 252, 111 S.Ct. 1801. Although the Supreme Court did not explain the closed versus locked distinction in Jimeno, the Fifth Circuit, in United States v. Mendoza-Gonzalez, 318 F.3d 663, 670 (5th Cir. 2003), inferred that two fundamental values led the Court to distinguish between a closed paper bag and a locked briefcase. There, the court stated:
The Supreme Court likely differentiated between a reasonable and unreasonable search of a container premised upon general consent to search the vehicle in which it was found by the varying impact that such a search has on two interests: (1) the owner’s expectation of privacy as demonstrated by his attempt to lock or otherwise secure the container; and (2) the owner’s interest in preserving the physical integrity of the container and the functionality of its contents.

Id.

In Mendoza-Gonzalez, Border Patrol agents found large quantities of marijuana inside taped cardboard boxes inside the defendant’s trailer after receiving the defendant’s permission to look inside the trailer. In upholding the search, the court found that the first interest mentioned above — the defendant’s expectation of privacy — was implicated in that case. The *885 court found that the defendant’s “expectation of privacy with regard to the brown cardboard boxes did not rise to the level of that evidenced by a locked container,” explaining that “locked containers require specific knowledge of a combination, possession of a key, or a demonstration of significant force to open.” Id.
In Wells, the “locked briefcase” decision distinguished by the Supreme Court in Jirneno, the Florida Supreme Court relied on the expectation of privacy interest underlying the Fourth Amendment in holding that a general consent to search the trunk of an automobile was not sufficient to justify breaking open a locked briefcase found within the trunk. Wells, 539 So.2d at 467-468. The court explained:
The very act of locking such a container constitutes a manifest denial of consent to open it, readily discernible by all the world. It creates a legally recognized zone of privacy inside that container ... that is protected under the United States Constitution and Florida’s privacy amendment from the kind of governmental intrusion without probable cause that occurred in this case.

Id.

In this case, the locked console in the defendant’s car was as much a manifestation of an expectation of privacy in the contents as the locked briefcase in Wells. In both cases, if law enforcement officers wanted access, they had to ask for the key or lock combination or use significant force to open the container. See Mendoza-Gonzalez, 318 F.3d at 671. When the deputy in this case asked for the key, appellant told him that it was not available — that only his mother had a key. In spite of that, the deputy located the key himself and used it to gain access to the console. While his action in doing so was not as intrusive as prying the lock open, it was nonetheless a violation of the defendant’s expectation of privacy in the console. If the defendant had wanted the officer to search the console, he would have given him the key, instead of denying that he had one. Appellant’s actions should have been objectively seen as an affirmative attempt to narrow the scope of his general consent and prevent a search inside the console.
In Moreland v. State, 552 So.2d 937, 938 (Fla. 2d DCA 1989), the officer asked the driver, “Do you mind if I look inside your car?” The defendant responded, “Yeah, go ahead.” The second district found that the defendant’s consent did not extend to the contents of a closed box found in the trunk “which the officers searched without any further consent and to which the officers gained access with a key removed from the car’s ignition without defendant’s consent ...” (emphasis added). The court held that consent to the search of the inside of the car did not authorize the search of the trunk. See also Rodriguez v. State, 539 So.2d 513 (Fla. 2d DCA 1989) (holding that officer’s request to “look” into car did not justify use of car keys to open trunk).
The state argues that it was objectively reasonable for the deputy to believe that appellant’s general consent to search extended to the locked console, because appellant did not set any limits on the search of his car and did not protest the deputy’s actions when he removed the key from the ignition and opened the console. We disagree. As discussed above, the deputy should have reasonably understood that appellant was setting limits on his consent to search when he told the deputy that only his mother had a key to the console. This clearly showed that appellant was “at least reluctant, if not unwilling” to open the console for the deputy’s inspection. See Hutchinson, v. State, 505 So.2d 579, 580-81 (Fla. 2d DCA 1987) (holding that *886 defendant’s consent to officer’s request to see what was in her purse did not extend to the contents of small unopened bags within the purse where the defendant’s actions showed that she was reluctant, if not unwilling, to open the bags).
Further, because appellant was being held at the back of the vehicle by another officer when Deputy Walsh removed the ignition key to unlock the console, he may have been unable to see Deputy Walsh’s actions and thus unable to protest. Cf. Oliver v. State, 642 So.2d 840 (Fla. 4th DCA 1994) (holding that the defendant’s general consent to search the vehicle included allowing the police officer to take the keys from the ignition and open the trunk where the defendant was present and did not protest when the officer did so); Mendoza-Gonzalez, 318 F.3d at 670 (noting that a failure to object to the breadth of a search is properly considered an indication that the search was within the scope of the initial consent). We therefore conclude that the trial court erred in denying the motion to suppress.

Reversed and Remanded.

WARNER and POLEN, JJ., concur.