POLEN, J.
 

 The State appeals an order suppressing evidence. We affirm, finding that the record supports the trial court’s determination that there was no voluntary consent.
 

 Around 3:00 a.m. on the morning in question, Fort Lauderdale Police Sergeant Florenco stopped defendant for “careless driving.” According to Florenco, defendant’s vehicle was traveling between 90 and 100 miles per hour over the 17th Street bridge, and was crossing all lanes of traffic. Defendant did not pull over immediately, but proceeded a short distance and parked behind a closed business. Floren-co said this was “very unusual,” because “there was [sic] ample places to pull over on 17th Street.” As defendant sat in the driver’s seat, Florenco, who was in uniform, asked for defendant’s license and registration. Defendant was “extremely nervous,” and kept looking around and over his shoulder. He “was very distracted” as the officer was talking to him, picking up items in the car not relevant to the traffic stop, and was sweating “profusely.” Florenco testified:
 

 Based on [defendant’s] behavior and his actions, his erratic motions, his failure to interact as if it was just a routine traffic stop, it led me to believe that something more had occurred in the car. I didn’t know what it was at that time. It was
 
 merely suspicious behavior.
 

 (emphasis added). In response to this suspicion, Florenco did not cite defendant for careless driving as he had originally intended,
 
 [1]
 
 but asked defendant to step out of his vehicle. Florenco claimed he then asked for permission to search defendant’s person, and that defendant complied, never resisting or withdrawing his consent. When asked whether he had reason to believe defendant had any weapons, Flo-renco testified, “I just had a heightened suspicion.” Florenco put his hand inside of defendant’s right front pocket and pulled out a small baggy containing cocaine residue. Defendant moved to suppress the cocaine, alleging in part that it was obtained during an unlawful detention and that he did not consent to the officer’s request to search, but rather, acquiesced to his authority.
 

 Defendant testified at the suppression hearing. He did not remember exactly how fast he was driving that night, but it
 
 *94
 
 was not 90 to 100 miles per hour. He was nervous when he saw the police car behind him because it was 3:00 a.m., and he was out later than he had told his wife. Defendant looked for a safe spot to pull over. When he saw the officer approaching his vehicle, he rolled down his window. He presented his license, registration and insurance, upon the officer’s request. When the officer returned shortly thereafter, he told defendant to step out of the vehicle. Defendant complied. He did not know he had the option to say “no.” The officer asked defendant to go to the back of the police vehicle and turn around. Then “he just started searching” defendant. Prior to that, the officer never told defendant what he was doing. Defendant thought the officer might give him a sobriety test. The officer did not point a gun at him, threaten him or make any promises to him.
 

 When the State asked defendant if he had consented to the search, the following colloquy ensued:
 

 A It was not really a consent. It was get out of your vehicle, come to the back, turn around.
 

 Q Did he ask?
 

 A It was free flowing.
 

 Q It was a couple of minutes?
 

 A Yes. Everything. It was not long before I was in the police vehicle.
 

 Defendant testified that the officer did not ask for permission to search him.
 

 The trial court ruled that, although defendant was properly stopped for speeding, he did not give the officer consent to search his person. The court found that, any consent given was a submission to authority and not voluntary, stating:
 

 I find that under the circumstances, the defendant — a reasonable person when asked to exit, would not believe that he had or when even being asked to be searched, under the totality of circumstances that the Court heard, would not believe that he had the ability to decline the request of the law enforcement officer .... [T]he police had his license. I find that the officer — this was not a pleasant conversation. This was ... serious. The officer was heightened to what he viewed as the defendant stopping in an unusual location and that he simply was not nicely asked out of the car, but he was ordered out of the car....
 

 The court agreed it was finding that defendant was
 
 ordered
 
 out of the vehicle, stating:
 

 I believe that he was asked and his compliance was simply acquiescent to what he perceived to be an order from law enforcement .... yes, I am finding that it was an order.... And the reason is that I find based upon the totality. It wasn’t one thing ... I am weighing the totality of the entire encounter in making this determination. There is not one thing I am pointing to that ah-ha, that is there. I am granting the motion. I am basing it on the totality of the stop. The totality of the circumstances of the contact. I do find that this was an acquiescence to police authority.
 

 “[A] trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness, and the reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.”
 
 Pagan v. State,
 
 830 So.2d 792, 806 (Fla.2002). Review of the trial court’s application of the law to the facts is de novo.
 
 See Alvarez v. State,
 
 15 So.3d 738, 741 (Fla. 4th DCA 2009). We defer to a trial court’s factual findings if supported by competent, substantial evidence.
 
 Id.
 
 at 741.
 

 
 *95
 
 The State is correct that, “Once a motor vehicle has been lawfully detained for a traffic violation, the police officer may order the driver to exit the vehicle without violating the fourth amendment’s proscription of unreasonable searches and seizures.”
 
 Stanley v. State,
 
 559 So.2d 460, 461 (Fla. 4th DCA 1990) (quoting
 
 Pennsylvania v. Mimms,
 
 434 U.S. 106, 112, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)). To validate a warrantless search, however, the State must show that the search falls within a constitutional exception, one of which is voluntary consent.
 
 Hicks v. State,
 
 852 So.2d 954, 960 (Fla. 5th DCA 2003).
 

 As this court recently reiterated: “[T]he State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority.”
 
 Florida v. Royer,
 
 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). The state must prove its burden by a preponderance of the evidence.
 
 Jorgenson v. State,
 
 714 So.2d 423, 426 (Fla.1998).
 

 E.J. v. State,
 
 40 So.3d 922, 923 (Fla. 4th DCA 2010). “To conclude that a search is involuntary the court must find that the defendant’s ‘will ha(d) been ... overborne and his capacity for self-determination critically impaired.’ ”
 
 Id.
 
 (quoting
 
 United States v. Watson,
 
 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (quoting
 
 Schneckloth v. Bustamonte,
 
 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)));
 
 see also Wilson v. State,
 
 952 So.2d 564, 569 (Fla. 5th DCA 2007).
 

 “[T]he voluntariness of a defendant’s consent to search is a question of fact to be determined from the totality of the circumstances.”
 
 Wyche v. State,
 
 987 So.2d 23, 26 (Fla.2008) (citing
 
 Schneckloth,
 
 412 U.S. at 227, 93 S.Ct. 2041). “The standard for measuring the scope of a person’s consent under the Fourth Amendment is that of objective reasonableness: what an ordinary reasonable person would have understood to be the scope of consent by the exchange between the officer and the consenting person.”
 
 J.J.V. v. State,
 
 17 So.3d 881, 884 (Fla. 4th DCA 2009) (citing
 
 Florida v. Jimeno,
 
 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991)).
 

 Here, Florenco testified that, when he asked defendant to step out of his vehicle, and then for permission to search his person, that defendant complied with all of the officer’s requests. He did not resist or withdraw his consent. Defendant testified, however, that the officer
 
 never asked
 
 for permission to search him, that “he just started searching” defendant. According to defendant, “[i]t was not really a consent. It was get out of your vehicle, come to the back, turn around.” These facts support the trial court’s finding that defendant did not give his consent, as the trial court was free to reject the officer’s testimony.
 
 See Navamuel v. State,
 
 12 So.3d 1283, 1285 (Fla. 4th DCA 2009) (“The trial court is vested with the authority to determine the credibility of the witnesses and the weight of the evidence ....”) (citation omitted).
 

 Alternatively, the finding that any consent given was a submission to authority and not voluntary, is also supported by competent substantial evidence. Defendant testified that he was told by the uniformed officer, who had not yet written him a traffic ticket, to get out of his vehicle, come to the back, and to turn around. Then the officer “just started searching” defendant. The officer had asked for and retained defendant’s license and registration. As defendant argues, “there is nothing in this record to indicate to [him] that a search of his person was [anyjthing other than one more ordinary step in the ticket writing process.”
 

 
 *96
 
 For the foregoing reasons, we affirm the trial court’s order granting defendant’s motion to suppress.
 

 Affirmed.
 

 WARNER and LEVINE, JJ., concur.
 

 [1]
 

 . Florenco testified that he wrote the citation "later.”