790 So.2d 1122 (2001)
STATE of Florida, Appellant,
v.
Stephen Charles ALLEN, Appellee.
No. 2D00-4105.
District Court of Appeal of Florida, Second District.
June 20, 2001.
Rehearing Denied July 31, 2001.
*1123 Robert A. Butterworth, Attorney General, Tallahassee, and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellant.
Robert A. Herce of Herce & Herce, P.A., Tampa, for Appellee.
CASANUEVA, Judge.
The State appeals an order suppressing evidence seized pursuant to a search warrant issued to the "Chief of the Tampa Police Department and/or any police officer thereof," which was served and executed within Hillsborough County but not within the corporate limits of the city of Tampa. The State contends that the seizure was valid because the warrant was obtained and executed pursuant to a voluntary cooperation agreement between the Tampa Police Department and the Hillsborough County Sheriff's Department, as authorized by the Florida Mutual Aid Act, section 23.12, Florida Statutes (1999). We reject the State's arguments and affirm.
We review this case upon the factual record as stipulated by the parties in the circuit court. On February 15, 2000, a Tampa Police Department detective received information originating from an anonymous source that a marijuana odor was emanating from a structure on Mr. Allen's property. Based upon this information, the detective traveled to the described location in Lutz, Florida, which is not within Tampa's city limits. There he located the garage or shed described in the tip and later identified the individuals who had called in the tip. With their consent and while on their property he was able to get very close to the garage on Mr. Allen's property; from that vantage point he could smell a distinct marijuana odor coming from the garage. Armed with this information, he ultimately procured a search warrant.
The detective returned to the property, read the warrant to Mr. Allen who had been detained there, executed the warrant, and seized a number of marijuana plants and cultivation equipment. During the execution of the warrant a Hillsborough County deputy sheriff was present but did not provide any assistance. Although the *1124 investigation required the detective to make two trips to the Lutz property on two different occasions and to apply for a search warrant, he did not communicate with the Hillsborough County Sheriff's Office to tell them of the Tampa Police Department investigation until just prior to executing the search warrant. The circuit court considered these facts as well as counsels' argument and suppressed the evidence on the ground that the Tampa police officers were acting outside of their territorial jurisdiction without any lawful authority to do so.
Section 23.1225 authorizes three types of mutual aid agreements: a voluntary cooperation written agreement between two or more law enforcement agencies, a requested operational assistance written agreement, and a combination of the two. Our legislature concluded that such agreements were necessary because of the "possibility of the occurrence of natural or manmade disasters or emergencies and other major law enforcement problems." § 23.121(1). These agreements help solve problems that cross jurisdictional lines and serve to enhance public safety. Id. One statutorily recognized purpose of mutual aid agreements is to "provide for a system for the receipt and dissemination of information, data, and directives pertaining to activities among law enforcement agencies." § 23.121(1)(c).
Here, the State contends that the first type of mutual aid agreement, a voluntary cooperation agreement between the Hillsborough County Sheriff's Department and the Tampa Police Department, supports the Tampa police detective's seizure of property outside the city limits. A mutual aid agreement authorized by section 23.1225(1)(a) permits "voluntary cooperation and assistance of a routine law enforcement nature across jurisdictional lines." The statute explicitly recognizes the propriety of such activities as "establishing a joint city-county task force on narcotics smuggling," id., or a traffic enforcement task force, but the statutory examples are not meant to be exclusive.
Section I of the voluntary cooperation agreement between the Sheriff's Office and the Tampa Police Department provides that either agency may request the other's voluntary assistance in routine matters of law enforcement that do or might cross jurisdictional lines. Specifically named routine matters include, but are not limited to, development of intelligence, continuation of investigations, collection of evidence, and apprehension of suspects. Section II requires the agency taking action to notify the other of all pertinent details of law enforcement activity occurring in the latter's jurisdiction. Notice should be given "preferably prior to taking law enforcement action in the primary jurisdiction of the other agency, but in any event as soon thereafter as practical...." The agreement defines primary jurisdiction for the Tampa Police Department as all property within Tampa city limits and for the Sheriff's Office as all unincorporated areas of Hillsborough County.
At the crux of this case is the following limitation in the agreement:
TPD [Tampa Police Department] officers shall not routinely commence investigations of crimes or actively seek out criminal activity outside of their primary jurisdiction. Rather, the party agencies anticipate that by this Agreement, TPD officers may continue into the unincorporated portions of Hillsborough County, those investigations which commence within Tampa city limits.
In granting the motion to suppress, the circuit judge concluded that the police detective's action did not constitute an ongoing investigationthat the investigation "did not commence within the city of Tampa *1125 limits other than somebody called the city of Tampa police." The circuit court further found that the initial telephone tip did not constitute an investigation that commenced within the city, but graciously offered to "[l]et the Second District sort it out as far as I'm concerned." As it is this court's charge to sort things out, we conclude that the circuit court's decision was correct. In so holding we have examined the common law on the territorial jurisdiction of municipal officers, the voluntary cooperation agreement in this case, and the statutory purpose of the authorizing legislation.
The general rule is that a municipal police officer, while acting as a police officer, may conduct investigations beyond the municipal limits; however, that authority is limited to those instances where the subject matter of the investigation originates inside the city limits. State v. Chapman, 376 So.2d 262 (Fla. 3d DCA 1979); Parker v. State, 362 So.2d 1033 (Fla. 1st DCA 1978). In Wilson v. State, 403 So.2d 982 (Fla. 1st DCA 1980), the court determined that a motion to suppress evidence seized as a result of an investigation undertaken by officers of the Lake City Police Department outside the city limits should have been granted. Initially, the court, applying the reasoning of Chapman and Parker, noted that since the officers were "acting outside their territorial jurisdiction, the investigation was proper, if at all, only if it could have been conducted by a private citizen." Id. at 984.
Here, the detective undertook an investigation outside Tampa city limits and was therefore without subject matter authority to do so. As in Wilson, because the officer began the investigation and sought the warrant under the color of his office, he was not acting as a private citizen. Thus, unless saved by the voluntary cooperation agreement, the officer's action was improper.
The voluntary cooperation agreement in this case, however, reiterates the common law principle that a municipal officer may generally conduct an investigation outside the city limits only where the subject matter of the investigation originated inside the city limits. See United States v. Hines, 717 F.2d 1481, 1484-85 (4th Cir. 1983) (citing Chapman, 376 So.2d 262; Parker, 362 So.2d 1033). Here, the cooperation agreement maintains the traditional territorial jurisdiction distinctions by mandating that Tampa Police Department officers are not to routinely commence investigations of crimes in the area of the Sheriff's Office primary jurisdiction. The receipt of the tip, in spite of the fact that it occurred within the city limits, did not constitute commencement of an investigation within the city. Rather, the investigation began when the detective acted upon the tip by going to gather more facts and evidence in Lutz, an area outside the Tampa city limits and outside his territorial jurisdiction.
The announced policy of the Florida Mutual Aid Act was to provide a means to deal with disasters, emergencies, and other major law enforcement problems. § 23.121(1). The events in this case do not rise to such a level, nor does the record indicate that exigent circumstances confronted the detective. The anonymous tip was routine information that the detective could have easily passed on to the agency possessing jurisdiction to undertake the appropriate investigation. A voluntary cooperation agreement cannot extend police powers beyond the specific additional authority granted by the legislature. Here, the legislative intent was to assure the continued functioning of law enforcement in times of emergencies or in areas where *1126 major law enforcement efforts were being thwarted by jurisdictional barriers.
The State has suggested that the voluntary cooperation agreement confers upon municipal police officers jurisdictional powers coextensive with those of the county deputy sheriffs. We do not agree. An expansion of police power jurisdiction to that degree is not authorized by the legislature's conferring upon the municipalities the miscellaneous executive power to enter such agreements. In the absence of a clear legislative intent to universally expand both municipal and county law enforcement jurisdiction, we do not believe it is the role of the judiciary to do so.
Accordingly, we affirm the circuit court's order granting the motion to suppress.
GREEN, A.C.J., and STRINGER, J., Concur.