865 So.2d 531 (2003)
STATE of Florida, Appellant,
v.
Paul T. HENDREX, Appellee.
No. 2D02-3584.
District Court of Appeal of Florida, Second District.
December 12, 2003.
Rehearing Denied February 10, 2004.
*532 Charles J. Crist, Jr., Attorney General, Tallahassee, and Deborah F. Hogge, Assistant Attorney General, Tampa, for Appellant.
James Marion Moorman, Public Defender, and Timothy J. Ferreri, Assistant Public Defender, Bartow, for Appellee.
CANADY, Judge.
The State appeals an order of the trial court suppressing illegal drugs that were found in the possession of Paul T. Hendrex when he was detained and arrested. Because we conclude that the police officer who detained and arrested Hendrex had the necessary legal justification for doing so, we reverse.

I. BACKGROUND
At Hendrex's suppression hearing, the State presented the testimony of several police officers. This testimony revealed that the investigation of Hendrex began when a juvenile who was arrested for breaking into cars told the police that he had committed his crimes because he was addicted to methamphetamine. The police asked the juvenile to help them arrest his drug dealer, and the juvenile agreed to cooperate. The juvenile was known to police and in the past had provided them with information concerning the location of certain persons. There was no showing, however, that the information the juvenile had previously provided had ever led to an arrest. The juvenile identified Hendrex as his dealer and gave the police a detailed physical description of both Hendrex and Hendrex's car. He also explained that his ordinary course of dealing with Hendrex was that he would call Hendrex when he had some stolen radios to trade for drugs. Testimony was also presented by an officer with experience in criminal investigations that transactions involving bulk radio sales were frequently linked with criminal drug activity.
According to the testimony of the officers, the juvenile was directed to make a "controlled call"that is, a call in which an officer dialed the phone and listened to the juvenile during the callfrom an officer's cell phone to Hendrex to set up a meeting. During the call, the officer heard the juvenile inform Hendrex that he had "some radios to show him." Following the call, the juvenile informed the officer that Hendrex had agreed to meet at the juvenile's residence shortly to look at the radios. There was no overt mention of criminal activity or drugs during the call, although the juvenile did inform the officer that Hendrex had mentioned during the call that he still had a couple of radios left over from a prior transaction with the juvenile.
*533 The officers began driving toward the juvenile's residence in anticipation of Hendrex's arrival. Hendrex, however, arrived at the juvenile's residence before the officers and called the cell phone that had been used for the controlled call. In an effort to stall Hendrex and give the officers time to reach the residence, an officer who posed as the juvenile's friend told Hendrex that the juvenile had gone into a convenience store and would be at the residence in a few minutes. Fearing that Hendrex was getting "antsy" and that he might leave before the officers arrived, the officers provided detailed descriptions of Hendrex and his car to another officer who was patrolling the area of the juvenile's residence. That officer was advised that there was probable cause for Hendrex's arrest. When that officer approached the residence, he observed a vehicle in the driveway with a person inside. Both the vehicle and its occupant fit the descriptions the officer had been given. The trial court described the sequence of events as follows:
Thereafter, [the officer] parked behind [Hendrex], who was seated in his vehicle in the driveway of the [residence], and initiated his vehicle's overhead lights. After exiting his patrol car, [the officer] withdrew his service weapon and ordered [Hendrex] out of the car and to lie on the ground. [Hendrex] exited the vehicle and began "digging around in his pocket." [Hendrex] removed a small plastic bag containing a white powdery substance from his front pants pocket and placed it on the ground next to him as he lay down. [Hendrex] was then handcuffed.
The contents of the bag were later tested and determined to be methamphetamine. A subsequent search of Hendrex's person and automobile led to the discovery of a quantity of marijuana.
In his motion to suppress, Hendrex argued that the juvenile informant's tip did not give the police probable cause to arrest him. The trial court accepted this argument and stated in its order that the tip was sufficient to create reasonable suspicion to stop Hendrex and question him about his activities but was inadequate to constitute probable cause to arrest Hendrex. The trial court concluded:
Under the facts of this case, the Court finds that the officer would have been justified in stopping [Hendrex] and detaining him for a reasonable length of time in order to further investigate the allegations and information of the informant. However, that is not what happened in this case. Upon initial contact by law enforcement [Hendrex] was immediately `seized' when he was ordered out of his car.
In support of its ruling, the trial court cited Popple v. State, 626 So.2d 185, 188 (Fla.1993), a case in which the supreme court concluded that the officers "did not have the reasonable suspicion necessary to authorize an investigatory stop."

II. ANALYSIS
When a trial court's ruling on a motion to suppress is reviewed on appeal, the trial court's findings of historical fact are reviewed under a deferential standard, but the trial court's determinations on mixed questions of law and fact and its legal conclusions are subject to de novo review. Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Connor v. State, 803 So.2d 598, 608 (Fla.2001). When considering a motion to suppress, a court is required to consider the "totality of [the] circumstances" that led to the discovery of evidence. State v. Butler, 655 So.2d 1123, 1128 (Fla.1995).
The disposition of this case turns on the distinction between an investigatory stop *534 and an arrest. An arrest involves a higher level of police intrusion than does an investigatory stop. Under the Fourth Amendment, an arrest therefore requires a higher level of justification than that required for an investigatory stop. Based upon the trial court's historical factual findings, we conclude that (1) the initial detention of Hendrex was an investigatory stop and not an arrest; (2) the investigative stop was legally justified; and (3) the voluntary production by Hendrex of the small plastic bag in the course of the investigatory detention gave the officer probable cause to arrest Hendrex and to search his person and his vehicle. We thus conclude that the trial court erred in determining that Hendrex was subjected to arrest without probable cause, while we agree with the trial court's conclusion that the police had the reasonable suspicion necessary to make an investigatory stop.
"An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion." Ornelas, 517 U.S. at 693, 116 S.Ct. 1657 (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). For a reasonable suspicion to exist, "the detaining officers must have a particularized objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 411-12, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Although an officer making an investigatory stop "must be able to articulate something more than an inchoate and unparticularized suspicion or `hunch,'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (citing Terry, 392 U.S. at 30, 88 S.Ct. 1868), the "level of suspicion required for [such a] stop is obviously less demanding than that for probable cause," id. (citing United States v. Montoya de Hernandez, 473 U.S. 531, 541, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985)).
Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.
Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).
An investigative stop may be based on a police officer's personal observations. See United States v. Sharpe, 470 U.S. 675, 682 n. 3, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (holding that police observation of overloaded pickup truck with camper shell commonly used to transport illegal drugs, driving in tandem with car and evading police, provided reasonable suspicion to justify investigatory stop). But information provided to the police by an informant may also serve as the basis for an investigatory detention. See White, 496 U.S. at 326-27, 110 S.Ct. 2412 (holding that there was reasonable suspicion to justify stop of person based on anonymous informant's correct description of detainee's vehicle, time of departure, and travel destination).
Here, the trial court correctly concluded that the police had the reasonable suspicion necessary to justify an investigative detention of Hendrex. The facts of the instant case are similar to those in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), where the court held that an investigative stop was justified. In Adams, the investigatory detention was based on information provided to a police officer by an informant that the defendant who was "seated in a nearby vehicle was carrying narcotics and had a gun at his waist." Id. at 145, 92 S.Ct. 1921. The court noted that the "informant *535 was known to the officer personally and had provided him with information in the past." Id. at 146, 92 S.Ct. 1921. The court stated: "This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene." Id.
Similarly, in the present case, the juvenile informant was known to the police and had provided them with information in the past. In addition, the reliability of the information he provided was demonstrated by his ability to influence and predict the future conduct of the defendant. When the defendant responded to the phone call from the informant, the police were thus ableat least to some extentto corroborate the reliability of the informant. See also White, 496 U.S. at 332, 110 S.Ct. 2412 ("When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop."). Finally, the prediction of Hendrex's conduct was significant when viewed in light of the totality of the circumstances because there was testimony from a police officer with experience in criminal investigations that bulk sales of used car radios were highly correlated with criminal drug activity and that such transactions outside the context of criminal activity were rare. The trial court was thus correct to conclude that the police had reasonable suspicion to stop Hendrex.
Hendrex argues that the credibility of the juvenile informant's tip should have been discounted because the tip was offered merely to curry favor with the authorities. But in the circumstances present here, the informant's desire to curry favor would in fact make it more likely that he would provide truthful information rather than untruthful information. The assertion that Hendrex would be in possession of drugs was readily subject to verification or nonverification by the police. And the informant would hardly expect to curry favor with the authorities by providing them information that they could readily determine was untruthful. Cf. Adams, 407 U.S. at 147, 92 S.Ct. 1921 (relying on circumstance that "the informant may have been subject to immediate arrest [under state law] for making a false complaint" if police "investigation proved the tip incorrect").
The trial court's error in this case arose from its conclusion that the initial encounter between the police and Hendrex constituted an arrest. In reaching this conclusion, the court stated: "Upon initial contact by law enforcement, [Hendrex] was immediately `seized' when he was ordered out of his car." The court apparently reasoned that such a seizure necessarily resulted in an arrest. But that is not the case.
This point is illustrated by Popple v. State, 626 So.2d 185 (Fla.1993), which was cited by the trial court as supporting authority. In Popple, a police officer directed the defendant to leave his vehicle. The Florida Supreme Court concluded that the officer's conduct resulted in a seizure under the Fourth Amendment. But the court concluded not that the defendant had been arrested, but that he had been subjected to an "investigatory stop." Id. at 188, 626 So.2d 185. A similar "seizure" occurred in the course of the investigative stop in the instant case when Hendrex was ordered out of his vehicle by the officer.
The fact that the investigative stop of Hendrex was effected at gunpoint did not convert it into an arrest. It has long been recognized that in a properly justified investigatory stop an officer has grounds "to insist on an encounter" with the subject of *536 the stop, that is "to make a forcible stop." Terry, 392 U.S. at 32, 88 S.Ct. 1868 (emphasis supplied). In State v. Perera, 412 So.2d 867, 871 (Fla. 2d DCA 1982), we held that conducting an investigative stop at gunpoint was appropriate:
That the officers used their sirens and flashing lights and had their guns drawn also did not change the stop into an arrest.... [W]here there is a clear possibility of the type of criminal activity which the officers believed they were encountering in the present case, we cannot fault them for having their guns at the ready for their own protection.
See also Carroll v. State, 636 So.2d 1316, 1318 (Fla.1994) ("The stop was not necessarily converted into an arrest because the officer drew his gun and directed [the defendant] to lie on the ground.") (citing Perera and State v. Ruiz, 526 So.2d 170 (Fla. 3d DCA 1988)).
Nor does the fact that the officer who detained Hendrex had been toldand believedthat there was probable cause to arrest Hendrex mean that the initial detention of Hendrex was an arrest. We addressed this issue in Perera, where we held that the belief of police officers that there was probable cause to arrest did not convert an investigative stop into an arrest. 412 So.2d at 871. This court stated:
Our view [that the police conduct constituted an investigative stop] is not changed simply because some of the officers may have had the intent to arrest appellees prior to stopping them. Actions taken by a law enforcement officer must be examined objectively as to how they affect a suspect and not from the standpoint of what the officer's intent was.
Id.; cf. State v. Pye, 551 So.2d 1237, 1239 (Fla. 1st DCA 1989) ("The police officer's words alone cannot transform an investigatory stop into an arrest.").
Here, as in Perera, "immediately after the stop probable cause developed" when the illegal drugs came into the plain view of the police. 412 So.2d at 870. "Under [the plain-view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In the instant case, the officer had reasonable suspicion that Hendrex was engaged in illegal activity and conducted the stop in a lawful manner. The plastic bag that contained a substance that appeared to be an illegal drug was placed by Hendrex in the plain view of the officer, who was in a "lawful vantage point" to see it. Id. Once the officer observed the plastic bag, he had probable cause to arrest Hendrex and perform a search of Hendrex's person and vehicle incident to that arrest.

III. CONCLUSION
In stopping Hendrex, arresting him, and conducting the subsequent search, the police did nothing to transgress the Fourth Amendment. We therefore quash the order granting the motion to suppress and remand this case for further proceedings.
Reversed and remanded.
WHATLEY and SALCINES, JJ., Concur.