929 So.2d 1169 (2006)
Danny Patrick KEELING, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-3425.
District Court of Appeal of Florida, Second District.
June 7, 2006.
*1170 Larry Sandefer of Sandefer & Murtha, P.A. Clearwater, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Anne Sheer Weiner, Assistant Attorney General, Tampa, for Appellee.
VILLANTI, Judge.
Danny Patrick Keeling contends in this appeal that the trial court erred in denying his motion to suppress. He claims that the police lacked a founded suspicion that he had committed, was committing, or was about to commit a crime and thus the stop of his vehicle was unlawful. Accordingly, he contends that the trial court erred in denying his dispositive motion to suppress. We agree and, therefore, reverse.
In the early morning hours of July 30, 2004, St. Petersburg police officers responded to a report of a brawling at a convenience store. A clerk at the convenience store had called law enforcement regarding a violent altercation in the convenience store's parking lot.[1] The clerk reported four people were fighting, that a female went down with a possible head *1171 injury, and that a red Ford Ranger truck was leaving. The clerk reported the license tag number for the truck. Several police officers responded to the scene.
En route, Officer Troy Achey was given the residence address of the truck's owner and, without being told or ascertaining any additional facts, proceeded directly to that address. The record does not show that Officer Achey was asked to stop the truck or in any way detain its driver. Officer Achey testified, "Prior to getting to the 7-Eleven, I was advised that a vehicle involved in the brawling had left the scene and they didn't know who all was in the vehicle or how it was involved, but it had left and those people needed to be spoken to."
As Officer Achey approached the address, he noticed a red truck matching the given description leaving the apartment complex, and he followed it. Officer Achey stopped the truck, not based on any traffic violation or exigent circumstances, but rather on the information received via his radio. All the other officers who responded to the call testified that the reason for stopping the red truck was solely to gain information. Prior to the stop, the driver of the truck was not specifically identified as a suspect in any criminal offense. After the stop, Officer Achey and Officer Egulf of the DUI unit arrested Keeling, the driver of the red truck, for driving under the influence of alcohol.
In order to justify an investigatory stop, a police officer must have a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. Popple v. State, 626 So.2d 185, 186 (Fla.1993) (citing § 901.151(2), Fla. Stat. (1991))[2]; Morrow v. State, 848 So.2d 1290 (Fla. 2d DCA 2003); Coney v. State, 820 So.2d 1012 (Fla. 2d DCA 2002); Bryant v. State, 779 So.2d 464 (Fla. 2d DCA 2000); State v. Simons, 549 So.2d 785 (Fla. 2d DCA 1989). Mere suspicion is not enough to conduct an investigatory stop; the officer must have a well-founded and articulable suspicion of criminal activity. Popple, 626 So.2d at 186. "All that is required for a valid vehicle stop . . . is a founded suspicion on the part of the officer effectuating the stop that the occupants have committed or are about to commit a crime." London v. State, 540 So.2d 211, 213 (Fla. 2d DCA 1989) (citing Sumlin v. State, 433 So.2d 1303 (Fla. 2d DCA 1983)). "The officer's suspicion is `founded' upon an objective foundation which reasonably supports his assessment of the particular circumstances." Carter v. State, 454 So.2d 739, 741 (Fla. 2d DCA 1984). In contrast, investigatory stops based solely upon an inarticulable hunch or unparticularized suspicion are invalid. See State v. Setzler, 667 So.2d 343, 348 (Fla. 1st DCA 1995) (citing to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).
Here, it is clear that the officer lacked a founded suspicion to stop and detain Keeling or his vehicle. The commotion at the convenience store did not support the stop, and indeed the officers at the scene did not request a BOLO for Keeling or his vehicle. Officer Achey's *1172 independent observations did not, and could not, give rise to anything more than a mere suspicion of unlawful activity. If the officers desired to question Keeling concerning the alleged brawling incident, they should have waited for him to park and voluntarily exit his vehicle. At that point, a consensual citizen encounter would have occurred, and the odor of alcohol emanating from Keeling might then have served as probable cause to ultimately effectuate a valid DUI arrest.
Because the initial stop was unlawful, suppression should have been granted. Accordingly, we reverse the trial court's denial of the motion to suppress and remand.
CASANUEVA and KELLY, JJ., Concur.
NOTES
[1] The facts surrounding the convenience store clerk's call to law enforcement were not clearly developed in the record. We do commend the trial judge's admirable efforts to sort the confusing presentation at the suppression hearing into a comprehensive and comprehendible order.
[2] The "Florida Stop and Frisk Law" provides:

Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, he may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense.
§ 901.151(2), Fla. Stat. (1991).