986 So.2d 625 (2008)
STATE of Florida, Appellant,
v.
Stanley CLARK, Appellee.
No. 2D06-3231.
District Court of Appeal of Florida, Second District.
February 22, 2008.
*626 Bill McCollum, Attorney General, Tallahassee, and Tonja Rene Vickers, Assistant Attorney General, Tampa, for Appellant.
James Marion Moorman, Public Defender, and Timothy J. Ferreri, Assistant Public Defender, Bartow, for Appellee.
WALLACE, Judge.
The State appeals a circuit court order that granted Stanley Clark's motion to suppress controlled substances found in his motor vehicle. Police officers had searched the vehicle and seized the controlled substances following Mr. Clark's warrantless arrest. Because the police officers had probable cause to arrest Mr. Clark, they were authorized to search the vehicle of which he was a recent occupant. For this reason, we reverse the suppression order and we remand this case to the circuit court for further proceedings.

I. THE FACTS
The events that led to Mr. Clark's arrest began on October 5, 2005, with a tip from a confidential informant to a detective employed by the St. Petersburg Police Department. The informant told the detective that she could telephone several individualsincluding Mr. Clarkand arrange for them to deliver crack cocaine to her. The informant was the recent recipient of a notice to appear in court for an offense related to prostitution, and her motive for cooperating with the police was the hope of obtaining leniency. The informant had not previously provided information to the detective, and her reliability was untested.
The informant did not know Mr. Clark's name. Instead, she referred to him by the nickname of "Goldy." The informant described the suspect to the detective as a black male, about twenty-five years of age, approximately five feet, eight inches tall, and with a muscular build. According to the informant, the suspect used a black *627 Ford pickup truck to make deliveries of crack cocaine.
The informant gave the detective the suspect's telephone number, and the detective dialed the number on a cell phone. The detective activated the cell phone's speaker function so that he could hear both sides of the conversation, and he handed the phone to the informant. She spoke with the suspect and asked him to deliver a "yard"or $100 worthof crack cocaine. The informant told the suspect that she had a customer with her, and she asked the suspect to make the delivery at a different location than the one she normally used. The suspect responded that he would make the delivery and asked the informant to call him back in ten minutes.
Ten minutes later, the informant called the suspect a second time while the detective listened to the conversation. Once again, the informant requested a "yard" of crack cocaine. The suspect responded that he was just leaving his residence and asked the informant to call him back again in ten minutes with detailed directions to the delivery location.
After another ten minutes passed, the informant called the suspect a third time and directed him to a specific address in St. Petersburg. She instructed the suspect to drive down an alley, pull into a carport at the designated address, and beep his horn. When the horn sounded, the informant was to "come down" and meet the suspect to take delivery of the crack cocaine. At the conclusion of the third conversation, the suspect told the informant that he was approximately two minutes away from the designated delivery location.
Approximately two minutes later, the detective saw a black, 1999 Ford F-150 pickup truck turn into the alley. The suspect proceeded slowly down the alley as if he were looking for an unfamiliar address. When the suspect reached the designated address, he pulled into the carport and beeped his horn. From their vantage point, both the detective and the informant could see the suspect. The informant identified the suspect as Goldy, and the detective confirmed that the driver matched the description of the suspect that the informant had previously given.
Once the suspect had beeped his horn and his description as Goldy had been confirmed, the detective signaled other police officers to make an arrest. Thus no exchange of money for drugs between the informant and the suspect ever occurred. Meanwhile, the suspect had stepped out of his truck and had closed its door. An officer in a marked police cruiser activated its lights and siren and pulled in behind the truck, blocking any potential escape route. Another officer approached the suspect from behind, took him to the ground, and handcuffed him. This officer placed the suspect under arrest.
After the suspect's arrest, the officers identified him as Mr. Clark. The officers searched Mr. Clark, but they did not find any controlled substances on his person. Next, the officers searched the pickup truck. They found a plastic bag containing crack cocaine on the truck's floorboard and another plastic bag containing marijuana in the center console.

II. THE PROCEEDINGS IN THE CIRCUIT COURT
Based on the items found in the search of Mr. Clark's truck, the State charged him with the commission of two crimes: (1) possession of cocaine with intent to sell, manufacture, or deliver, a violation of section 893.13(1)(a)(1), Florida Statutes (2005), and (2) possession of not more than twenty grams of marijuana, a violation of 893.13(6)(b). Mr. Clark filed a motion to *628 suppress the cocaine and the marijuana that formed the basis for the charges. At a hearing on the motion in the circuit court, Mr. Clark emphasized the informant's lack of a prior record of providing reliable information. He argued that a review of the totality of the circumstances demonstrated that the police officers had nothing more than a reasonable suspicion that he was either committing or was about to commit a crime. Mr. Clark conceded that this reasonable suspicion would have authorized the police to detain him temporarily for further investigation. See Popple v. State, 626 So.2d 185, 186 (Fla. 1993) (identifying three levels of police-citizen encounters, including (1) a consensual encounter, (2) a temporary detention or investigatory stop, and (3) an arrest). However, Mr. Clark contended that the police lacked probable cause to arrest him and then to search his truck as an incident of the arrest. For this reason, Mr. Clark urged the circuit court to suppress the cocaine and the marijuana as the fruits of an illegal search.
Relying primarily on this court's decision in State v. Flores, 932 So.2d 341 (Fla. 2d DCA 2006), the circuit court agreed with Mr. Clark's argument and entered an order suppressing the contraband. From that order, the State timely filed this appeal.[1]

III. THE STANDARD OF REVIEW
We employ a mixed standard of review in considering the circuit court's ruling on Mr. Clark's motion to suppress. The circuit court's determination of historical facts enjoys a presumption of correctness and is subject to reversal only if not supported by competent, substantial evidence in the record. See E.B. v. State, 866 So.2d 200, 202 (Fla. 2d DCA 2004). However, the circuit court's determinations on mixed questions of law and fact and its legal conclusions are subject to de novo review. See Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Connor v. State, 803 So.2d 598, 608 (Fla.2001); E.B., 866 So.2d at 202.

IV. DISCUSSION

A. Framing the Issue
When the police officers searched Mr. Clark following his arrest, they did not find any contraband on his person. Instead, the officers found the cocaine and marijuana in the truck's passenger compartment. In the absence of a search warrant, there are three valid means by which law enforcement officers may search a motor vehicle: (1) incident to a lawful arrest of a recent occupant of the vehicle; (2) under the "automobile exception" to the warrant requirement, i.e., based on probable cause to believe that the vehicle contains contraband or other evidence of a crime; and (3) when a vehicle has been impounded, as part of a reasonable inventory search following standardized procedures. See Jaimes v. State, 862 So.2d 833, 836 (Fla. 2d DCA 2003); see also State v. Green, 943 So.2d 1004, 1006 n. 1 (Fla. 2d DCA 2006) (noting that exigent circumstances are not required in order to apply the "automobile exception" to the warrant requirement). Without question, the search of Mr. Clark's truck was not conducted as part of an inventory search. Additionally, the State did not argue in the circuit court that the "automobile exception" applied. Thus we focus on whether the search was incident to a lawful arrest *629 of Mr. Clark as a recent occupant of a vehicle.

B. Recent Occupant of a Vehicle
Mr. Clark had stepped out of his pickup truck before the police initiated contact with him. Under these facts, to determine the validity of the vehicle search under prior law, it would have been necessary to determine whether a search of the vehicle's passenger compartment was reasonable to ensure the arresting officers' safety or to preserve evidence. See Thomas v. State, 761 So.2d 1010, 1014 (Fla.1999) (holding that where the suspect had not left his vehicle at the direction of a law enforcement officer, the officer could not search the vehicle incident to the arrest of the suspect unless the officer's safety was endangered or the preservation of evidence was in jeopardy). However, the United States Supreme Court has now overruled the Thomas decision and clarified that for purposes of determining the lawfulness of the search of a vehicle's passenger compartment incident to an arrest, it is immaterial "whether the arrestee exited the vehicle at the officer's direction, or whether the officer initiated contact with him while he remained in the car." Thornton v. United States, 541 U.S. 615, 620-21, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004); see also Slone v. State, 902 So.2d 852, 853 (Fla. 4th DCA 2005) (recognizing the overruling of Thomas by Thornton).
Instead, once a law enforcement officer determines that there is probable cause to arrest a recent occupant of a motor vehicle, "it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment." Thornton, 541 U.S. at 623, 124 S.Ct. 2127. "[W]hile an arrestee's status as a `recent occupant' may turn on his temporal or spatial relationship to the car at the time of the arrest and search, it certainly does not turn on whether he was inside or outside the car at the moment that the officer first initiated contact with him." Id. at 622, 124 S.Ct. 2127 (footnote omitted); see also State v. Waller, 918 So.2d 363, 366-68 (Fla. 4th DCA 2005) (holding that a vehicle search was incident to arrest even though the arrestee had already been arrested, searched, and moved behind the vehicle before the vehicle was searched).
Here, the circuit court's findings concerning the sequence of events leading to the search of Mr. Clark's truck are pertinent:
Upon arrival, [Mr. Clark] exited the truck on his own and was outside of his vehicle. Immediately thereafter, a marked police cruiser blocked the rear of [Mr. Clark's] vehicle and another deputy [sic] ran over and took [Mr. Clark] to the ground and searched him. No drugs were found on [Mr. Clark's] person[,] and no sale had been discussed or commenced.
Another officer then proceeded to look into the vehicle . . . .
(Emphasis added.) Based on these findings of fact, Mr. Clark was in close temporal and spatial proximity to his vehicle when he was arrested and searched. Consequently, Mr. Clark was a "recent occupant" of the truck, and the vehicle search was lawful, provided that there was probable cause for Mr. Clark's arrest. Thus we turn now to the question of whether the police officers had probable cause to arrest Mr. Clark or if they acted based on mere suspicion.

C. Reasonable Suspicion or Probable Cause?
The State argues that the police officers had probable cause to arrest Mr. Clark. He responds that the police acted based on a mere suspicion that criminal *630 activity was afoot. In assessing these competing arguments, we "consider the `totality of [the] circumstances' that led to the discovery of [the] evidence." State v. Hendrex, 865 So.2d 531, 533 (Fla. 2d DCA 2003) (first alteration in original) (quoting State v. Butler, 655 So.2d 1123, 1128 (Fla. 1995)). Under a totality of the circumstances analysis, a court must take into account both the informant's veracity and the basis of the informant's knowledge. See Everette v. State, 736 So.2d 726, 727 (Fla. 2d DCA 1999). An informant's veracity may be established by proof that the informant has provided detailed and verifiable information on the occasion under review even if the informant has not provided reliable information in the past. See id. Another relevant factor in the analysis is the temporal proximity between the tip and the officer's verification of the information. See Owens v. State, 854 So.2d 737, 740 (Fla. 2d DCA 2003).
Here, our focus is on whether the totality of the circumstances provided the officers with probable cause to arrest Mr. Clark after he gave the prearranged signal and stepped out of his truck. First, we note that the informant acted "to curry favor with the authorities." See Hendrex, 865 So.2d at 535. The informant was motivated to solicit her suppliers to make deliveries of illegal drugs in order to obtain leniency for herself on a pending charge. The officers were unlikely to recommend leniency for the informant if she provided worthless or inaccurate information.
Second, the informant had obviously conducted prior transactions with Mr. Clark. She knew his telephone number and the type of drugs he had available for sale. The informant also provided a detailed description of Mr. Clark, including his race, age, height, build, nickname, and the type of vehicle that he drove.
Third, the detective was able to listen to both sides of the telephone conversations between the informant and Mr. Clark during which the details of the proposed drug transaction were arranged. Notably, the detective heard Mr. Clark agree to deliver a "yard" of crack cocaine to the informant. When Mr. Clark arrived at the delivery location and beeped his horn, the detective was able to corroborate every detail that the informant had provided. Moreover, the temporal proximity of the informant's tip to the verification of facts detailed by the informant, i.e., Mr. Clark's description and future actions, was only a matter of minutes.
Under these circumstances, the police officers had probable cause to arrest Mr. Clark as soon as he stepped out of his pickup truck because they had verified all of the details "except for the final one of the commission of the crime." State v. Flowers, 566 So.2d 50, 51 (Fla. 2d DCA 1990); see also Butler, 655 So.2d at 1129-31 (approving Flowers, 566 So.2d at 51, and State v. Brown, 556 So.2d 790 (Fla. 2d DCA 1990)); Roman v. State, 786 So.2d 1220, 1222 (Fla. 4th DCA 2001) (finding probable cause for a suspect's arrest where the police heard the informant's conversations with the suspect arranging a delivery of cocaine, and the informant provided verifiable details concerning the specific address where the suspect would arrive, the exact amount of cocaine that the suspect would bring, the description of the vehicle in which the suspect would be a passenger, and the time at which the suspect would arrive at the delivery point). Upon reaching this conclusion, our final task is to examine this court's prior decision in Flores, 932 So.2d 341, the case that the circuit court relied upon in deciding to grant Mr. Clark's motion to suppress.

D. The Flores decision is distinguishable.
In deciding to grant Mr. Clark's motion to suppress, the circuit court relied primarily *631 on the Flores decision. To be sure, there are some similarities between the fact pattern in Flores and the facts of this case. In Flores, as in this case, a confidential informant with no proven record of reliability arranged to make a purchase of cocaine from one of his suppliers. Id. at 342. However, there are also significant differences between Flores and the facts and the legal issue presented to us by Mr. Clark's case.
First, in Flores, the informant's tip lacked specific detail about the description of the suspect and the model and year of the vehicle that he would be driving to make the delivery. Id. Moreover, one of the details that the informant had suppliedthat the suspect would be alone turned out to be false. Id. Here, on the other hand, the informant provided specific details about the suspect's description and the color and type of vehicle that he would be driving. The detective was able to corroborate every detail that the informant had provided. And the suspect followed the informant's instructions to the letter.
Second, the officers in Flores did not hear the suspect speaking with the informant. In Flores, a police officer was merely present while the informant made arrangements by telephone to set up a meeting to purchase cocaine. Id. at 342. In this case, the detective actually heard all of the suspect's three telephone conversations with the informant, including the suspect's agreement that he would deliver a "yard" of crack cocaine at the time and place specified. See Bravo v. State, 963 So.2d 370, 375 (Fla. 2d DCA 2007) (finding probable cause for an arrest where the officers monitored and recorded telephone calls between the informant and the suspect during which the suspect agreed to deliver methamphetamine). This fact alone weighs heavily in favor of a finding of probable cause. The detective's monitoring of the informant's telephone conversations with the suspect and the other factual differences outlined above distinguish Flores from this case.
Finally, the issue before this court in Flores was not whether the informant's tip provided probable cause to make an arrest. Id. at 343. The Flores court specifically said: "[T]hat is not the issue in this case." Id. In Flores, the arrest of the suspect occurred after the officers temporarily detained the suspect and observed him discard cocaine. Id. This observation provided the probable cause necessary to make the arrest. Id. at 344. Thus the issue before this court in Flores was "whether the tip provided the reasonable suspicion needed to make the initial stop." Id. at 343. After a review of the totality of the circumstances, the Flores court concluded that the police had the reasonable suspicion necessary to conduct an investigatory stop of the suspect. Id. at 344. Here, Mr. Clark did not discard any illegal drugs prior to his arrest, and none fell out of his truck. In contrast to Flores, the issue before us in this case is one which the Flores court did not need to decide whether the informant's tip provided probable cause for the suspect's arrest.
Thus the facts in Flores were significantly dissimilar from the facts in this case. In addition, the legal issue that was before the Flores court is related to but different from the legal issue presented by Mr. Clark's case. For these reasons, the circuit court was led into error when it relied on the precedent established in Flores to grant Mr. Clark's motion to suppress.

V. CONCLUSION
To summarize, the police officers had probable cause to arrest Mr. Clark; they were authorized to search the passenger compartment of his vehicle incident to his *632 lawful arrest based on his status as a recent occupant of the vehicle. The circuit court erred in granting Mr. Clark's motion to suppress. Accordingly, we reverse the order granting the motion to suppress and we remand this case to the circuit court for further proceedings.
Reversed and remanded for further proceedings.
WHATLEY, J., and GALLEN, THOMAS M., Associate Senior Judge, Concur.
NOTES
[1] We have jurisdiction of the State's appeal in accordance with Florida Rule of Appellate Procedure 9.140(c)(1)(B).