CRENSHAW, Judge.
T.T.N. appeals his adjudication of delinquency and resulting commitment to a moderate-risk residential program for possession of cocaine, contending that the trial court erred in denying his motion to suppress because the evidence was the product of an illegal stop. We agree and reverse T.T.N.’s adjudication and sentence.
At the October 2008 hearing on T.T.N.’s motion to suppress, an officer testified that on June 10, 2006, he was on duty with the St. Petersburg Police Department when he came into contact with T.T.N. Other members of his unit initiated a traffic stop but the driver fled on foot, and the remaining passengers drove away in the vehicle. The driver was apprehended and arrested, and the officers — who had obtained the registered owner’s address based on the vehicle’s tag — drove to the vehicle owner’s residence in Gulfport.[1] The officer testified that once he arrived at the Gulfport residence in a marked police car, three individuals were standing by the vehicle. When they saw the officer pull up to the residence, two of the individuals ran inside the house while the third, later identified as T.T.N., ran to the side of the house.[2] The officer testified that upon exiting his vehicle, he identified himself as a police officer and advised the three individuals to stop. He followed T.T.N. to the side of the house and “[he] located [T.T.N.] hiding behind a bush. [T.T.N.] stood up, dropped a green M & M tube on the ground. [The officer] placed him in custody and re *899 trieved the tube from the ground.”[3] The contents of the tube were later positively identified as cocaine.
Following the suppression hearing, the trial court entered its order denying T.T.N.’s motion to suppress and made the following findings:
Under the reasoning of Oliver [State v. Oliver, 368 So.2d 1331, 1335 (Fla. 3d DCA 1979) ], the Court finds that [T.T.N.] voluntarily abandoned the tube of cocaine and it is therefore admissible regardless of the lawfulness of [the officer’s] stop.
[[Image here]]
Even if [the officer’s] stop was illegal, [T.T.N.’s] voluntary abandonment of the tube of cocaine cannot be tainted or made involuntary by a prior illegal police stop, absent an illegal search. Because the Court finds that the tube of cocaine was voluntarily abandoned by [T.T.N.] and not obtained as a result of the stop, it is therefore irrelevant whether [the officer] acted properly in fresh pursuit or acted improperly under the color of office when he arrested [T.T.N.] outside his jurisdiction. Because the tube of cocaine was voluntarily abandoned, [the officer] was entitled to retrieve it regardless of the lawfulness of his stop of [T.T.N.].
At the January 2009 trial, the same deputy who testified at the suppression hearing testified that when he followed T.T.N. around to the side of the residence, “I asked [T.T.N.] to show me his hands. He moved a little bit, and then the narcotics came out from, it was either a pocket or in his shirt, but it came off of his body as he moved.”[4] At the close of trial, T.T.N. was adjudicated guilty of possession of cocaine, and the trial court adopted the recommendation from the Department of Juvenile Justice by sentencing T.T.N. to the moderate-risk program. This appeal followed.
We conclude the trial court erred in refusing to suppress the evidence as a product of an unlawful stop because the trial court’s factual finding that the tube was voluntarily abandoned is not supported by the record. This court employs a mixed standard of review in considering a trial court’s ruling on a motion to suppress. State v. Clark, 986 So.2d 625, 628 (Fla. 2d DCA 2008). The trial court’s “determination of historical facts enjoys a presumption of correctness and is subject to reversal only if not supported by competent, substantial evidence in the record.” Id. The trial court’s legal conclusions are subject to de novo review. Id.
We first note that the officers from the St. Petersburg Police Department were outside their jurisdiction and had no authority to initiate an investigation at the vehicle’s registered address in Gulfport.[5] “The general rule is that a municipal police officer, while acting as a police officer, may conduct investigations beyond the municipal limits; however, that authority is limited to those instances where the subject matter of the investigation originates inside the city limits.” State v. Allen, 790 So.2d 1122, 1125 (Fla. 2d DCA 2001). Here the St. Petersburg *900 police officers’ initial involvement with the vehicle arose from an attempted traffic stop. Once the driver, who fled on foot, was apprehended and arrested, there was no new crime or incident to investigate.[6]
Because the officers’ investigation of the traffic infraction and the fleeing driver concluded with the driver’s arrest, we next find there was no basis for the arresting officer to stop T.T.N. In order to justify an investigatory stop, a police officer must have a reasonable, articulable suspicion that a person has committed, is committing, or is about to commit a crime. Keeling v. State, 929 So.2d 1169, 1171 (Fla. 2d DCA 2006); see also § 901.151, Fla. Stat. (2005). There was no reasonable indication that T.T.N. was involved or about to be involved in a crime at the time the St. Petersburg police officers arrived at the Gulfport address, and T.T.N.’s attempt to run away from the arresting officer was not sufficient to justify an investigatory stop. See Grant v. State, 596 So.2d 98, 99 (Fla. 2d DCA 1992).
The trial court concluded that even if the stop was unlawful, the tube of cocaine was admissible because T.T.N. voluntarily abandoned it. We disagree because the trial court’s finding of fact that the tube was voluntarily abandoned is not supported by competent, substantial evidence adduced at the suppression hearing and at trial. At the suppression hearing the arresting officer testified that when he followed T.T.N. to the side of the house, he found T.T.N. hiding behind a bush. At trial he testified that when he found T.T.N., he “asked [T.T.N.] to show me his hands.” Then T.T.N. “moved a little bit, and then the narcotics ... came off of his body as he moved.”[7] Therefore, the arresting officer’s testimony supports a finding that T.T.N. submitted to the officer’s authority after he was ordered to show his hands, and at that time the tube containing cocaine fell from T.T.N.’s body. See Grant, 596 So.2d at 100 (“A person is seized when he comes under the officer’s control either by physical force or by submission to the assertion of authority.”). Because the officer had no reasonable suspicion to justify a stop, and the tube was abandoned after T.T.N. submitted to the officer’s authority, we conclude that the nexus between the illegal stop and the abandonment warrants suppression of the evidence. See State v. Anderson, 591 So.2d 611, 613 (Fla.1992). Accordingly, we reverse T.T.N.’s adjudication and sentence.
Reversed.
CASANUEVA, C.J., and KELLY, J„ Concur.

. The officer acknowledged at the hearing that Gulfport is located outside the jurisdiction of the St. Petersburg Police Department.

. T.T.N. was identified by another officer as one of the passengers of the vehicle involved in the traffic stop.

. The officer recognized the dropped tube as "a common method for transporting or concealing crack cocaine.”

. At this point in the trial, T.T.N.'s counsel renewed his objection based on the motion to suppress. The trial court overruled the objection and admitted the tube into evidence.

.In fact, at the suppression hearing, the State argued, "[Tjhere’s no question in this case, yes, the officer was outside his jurisdiction and his actions made [sic] have been illegal in telling [T.T.N.] to stop."

. The officer testified at the suppression hearing that the police did not know whether the vehicle was stolen. But we do not find this bare hypothesis to be sufficient to justify an ongoing investigation outside the officers' jurisdiction because the vehicle was never reported stolen and was located at the address to which it was registered.

. We note that these additional facts from the trial supplement the deputy’s testimony at the suppression hearing and do not support the trial court’s conclusion that the tube was voluntarily abandoned.