NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


STATE OF FLORIDA, )
 )
 Appellant, )
 )
v. ) Case No. 2D17-4520
 )
RICKY DON WELCH, )
 )
 Appellee. )
_____ )

Opinion filed September 20, 2019.

Appeal from the Circuit Court for Manatee
County; Susan Maulucci, Judge.

Ashley Moody, Attorney General,
Tallahassee, and Katie Salemi Ashby,
Assistant Attorney General, Tampa, for
Appellant.

Howard L. Dimmig, II, Public Defender, and
Carly J. Robbins-Gilbert, Assistant Public
Defender, Bartow, for Appellee.


KELLY, Judge.

The State appeals from an order granting Ricky Don Welch's motion to

suppress evidence seized after Mr. Welch was discovered unresponsive behind the

wheel of his car. In granting the motion, the trial court reasoned that the officer had "no

articulable, reasonable, particularized basis to believe that the defendant in this case

was or had been engaged in wrongdoing at the time of the investigatory stop." Because the State has conceded that the encounter between Mr. Welch and the officer was indeed an investigatory stop, a matter on which we express no opinion, we address only the correctness of the trial court's determination that the stop was impermissible because the officer lacked a reasonable suspicion that Mr. Welch committed, was committing, or was about to commit a crime. This determination presents a question of law we review de novo. See State v. Hendrex, 865 So. 2d 531, 533 (Fla. 2d DCA 2003).

Mr. Welch's encounter with law enforcement was prompted when, around 11:30 in the evening, an officer with the Manatee County Sheriff's Office was on patrol and saw a car with its brake lights on stopped at the "key code entry box" of a gated residential community that was under construction. After tending to another call, the officer returned several minutes later and found the car in the same position with the brake lights still illuminated. He parked and watched the car for ten to twelve minutes because, as he explained, in his experience areas under construction are targets for thefts of appliances or construction materials, and he wanted to "make sure [the driver] wasn't somebody trying to enter the neighborhood that didn't belong there."

As the officer waited, a second car approached the gate. After trying without success to open the gate using a cell phone, the driver of the second car pulled behind the car at the entry box. The second car waited a few seconds and then flashed its lights and honked its horn in an apparent attempt to draw the attention of Mr. Welch, who was the driver of the stationary car. The person driving the second car got out, went up to Mr. Welch's car, and then returned to his own car. The officer then decided

to pull in behind the two cars "to see what was going on." As he approached the first car, Mr. Welch "began to rev the engine, (indicating noise), like on and off, kind of a high rev but at a slow, like pressing the accelerator slowly back and forth." The officer testified that the brake lights were no longer on and that Mr. Welch was "passed out" in the driver's seat with his eyes closed and head back. Despite an open window, Mr. Welch did not initially respond to the officer's attempts to wake him and only responded after the officer raised his voice.

The officer then asked Mr. Welch to turn off the engine "because he [had] been revving it." During the ensuing conversation, Mr. Welch "seemed confused," "lethargic," and "like he wasn't all there." The officer described him as "rosy colored," having glassy eyes, and "very mumbled, slurred speech." The officer requested Mr. Welch's driver's license; Mr. Welch provided an identification card. As the officer began to walk toward his patrol car to check for warrants, he "caught a whiff of alcohol." A DUI-trained officer was called to the scene and ultimately, Mr. Welch was arrested.

Mr. Welch argued, and the trial court found, that when the officer asked Mr. Welch to turn his car engine off so the officer could speak to him, it constituted an investigatory stop that had to be supported by reasonable suspicion. As we previously noted, we do not address the correctness of this determination because the State has not challenged it. We conclude, however, that by that time the totality of the officer's observations gave him a reasonable basis to conduct an investigatory stop.

The Fourth Amendment forbids unreasonable searches and seizures. Terry v. Ohio, 392 U.S. 1, 9 (1968). An investigatory stop by the police constitutes a seizure under the Fourth Amendment. Id. at 20-21. Such a stop is reasonable, and

therefore permissible under the Fourth Amendment, if it is "justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." United States v. Cortez, 449 U.S. 411, 417 (1981).  As explained in Cortez, the totality of the circumstances must provide the officer with an objective and particularized basis for the stop:

> Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. . . . But the essence of all that has been written is that the totality of the circumstances—the whole picture— must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

Id. at 417-18.

Under this analysis, two elements must be present before a stop is permissible.  Id. at 418.  First, the assessment must be based upon all the circumstances, including the officer's "objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers."  Id.  From this, an officer draws inferences and makes decisions.  Id.

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

Id.  The second element in the assessment of the whole picture is that "it must raise a suspicion that the particular individual being stopped is engaged in wrongdoing."  Id.

- 4 -

Here, the officer had "a particularized and objective basis for suspecting" Mr. Welch of criminal activity. See id. at 417. It was shortly before midnight when the officer observed Mr. Welch's prolonged presence at the entry box with his car engine running and brake lights on and his subsequent failure to respond when a second vehicle whose path he was blocking repeatedly flashed its lights and honked its horn. When the officer approached Mr. Welch's car, he heard the engine slowly revving on and off as if the accelerator was being depressed and then released and then he saw Mr. Welch "passed out" behind the steering wheel. Despite the open car window, the officer was initially unable to wake Mr. Welch. We conclude that these observations provided the officer with an objective and particularized basis to suspect that Mr. Welch was unlawfully operating his automobile under the influence of alcohol or narcotics and thus, he was justified in conducting an investigatory stop. See id.

Accordingly, we reverse the order granting Mr. Welch's motion to suppress and remand for further proceedings.

Reversed and remanded.


NORTHCUTT and ATKINSON, JJ., Concur.